JS 44  (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Nautilus Insurance Company

**DEFENDANTS**

200 Christian Street Partners, LLC; Virgil Procaccino; Arthur Elwood; and Milo, LLC

**(b)** County of Residence of First Listed Plaintiff    Maricopa County, AZ
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Nicholas A. Cummins
Bennett, Bricklin & Saltzburg LLC
1601 Market Street, 16th Floor, Philadelphia, PA 19103 (215) 561-4300

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☐ 2   U.S. Government Defendant
- ☐ 3   Federal Question *(U.S. Government Not a Party)*
- ☒ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 2201 (Declaratory Judgment) and 28 U.S.C. 1332 (Diversity)

Brief description of cause:
Declaration of no duty to defend or indemnify under insurance policy.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $    Declaratory Relief

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   Hon. R. Barclay Surick

DOCKET NUMBER   18-CV-1364

DATE
04/12/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 7233 East Butherus Drive, Scottsdale, AZ 85260

Address of Defendant: 2322 South Street, Philadelphia, PA 19146 ; See Attached for All Defendants

Place of Accident, Incident or Transaction: 501A South 12th Street, Philadelphia, PA 19147
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))          Yes☒ No☐

Does this case involve multidistrict litigation possibilities?          Yes☐ No☒
*RELATED CASE, IF ANY:*
Case Number: 18-CV-1364          Judge Hon. R. Barclary Surrick   Date Terminated: N/A

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐ No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes☒ No☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes☐ No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes☐ No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
   (Please specify) _____

B. *Diversity Jurisdiction Cases:*
1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

### ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Nicholas A. Cummins , counsel of record do hereby certify:
☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: April 12, 2018 _____  203238
                     Attorney-at-Law          Attorney I.D.#
**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____ _____
                              Attorney-at-Law          Attorney I.D.#
CIV. 609 (5/2012)

**Defendant Address List**

200 CHRISTIAN STREET PARTNERS, LLC
2322 South Street
Philadelphia, PA 19146

VIRGIL PROCACCINO
2322 South Street
Philadelphia, PA 19146

ARTHUR ELWOOD
2322 South Street
Philadelphia, PA 19146

ZACHARY KLEHR and DEBORAH GORDON KLEHR, h/w
507 South 12th Street
Philadelphia, PA 19147

HARMAN DEUTSCH CORP.
631 North 12th Street
Philadelphia, PA 19123

AB CONSTRUCTION, LLC
11614 Proctor Place
Philadelphia, PA 19116

TIR EOGHAIN CONSTRUCTION INC.
d/b/a DUGGAN EXCAVATION
446 Cedarwood Lane
Elkins Park, PA 19027

E&A DRYWALL CORPORATION
220-246 North 38th Street
Camden, NJ 08105

HIGH END DESIGN INSTALLATIONS, LLC
2840 Pine Road, Unit A3
Huntingdon Valley, PA 19006

JELD WEN WINDOWS AND DOORS
1162 Keystone Boulevard
Pottsville, PA 17901

MAXI-TECH ROOFING, INC.
3345 Ashville Street
Philadelphia, PA 19136

PHILLY BRICK AND STONE RESTORATION, LLC
9311 James Street, Suite B
Philadelphia, PA 19114

TAGUE LUMBER OF MEDIA, INC.
325 Media Station Road
Media, PA 19063

STRAWBRIDGE CROWE LLC t/a J. MALONEY & SON
3 South Route 73, PO Box 329
Cedar Brook, NJ 08018

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 7233 East Butherus Drive, Scottsdale, AZ 85260

Address of Defendant: 2322 South Street, Philadelphia, PA 19146

Place of Accident, Incident or Transaction: 501A South 12th Street, Philadelphia, PA 19147
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))　　　　Yes ☒　No ☐

Does this case involve multidistrict litigation possibilities?　　　　　　　　　　　　　　　Yes ☐　No ☒

*RELATED CASE, IF ANY:*

Case Number: 18-CV-1364　　　Judge Hon. R. Barclary Surrick　Date Terminated: N/A

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Yes ☐　No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Yes ☒　No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Yes ☐　No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Yes ☐　No ☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

**A.** *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
　　(Please specify) _____

**B.** *Diversity Jurisdiction Cases:*

1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
　　(Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Nicholas A. Cummins , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: April 12, 2018　　　　　　　　　　　　　　　　　　　203238
　　　　　　　　　　　Attorney-at-Law　　　　　　　　　　　　Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____　　　　_____　　　_____
　　　　　　　　　　　　　　　Attorney-at-Law　　　　　　　　Attorney I.D.#

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Nautilus Insurance Company | : | **CIVIL ACTION** |
| v. | : | |
| 200 Christian Street Partners, LLC, et al. | : | **NO.** |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the **track** to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

**(a)** Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

**(b)** Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

**(c)** Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

**(d)** Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

**(e)** Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.)  ( )

**(f)** Standard Management – Cases that do not fall into any one of the other tracks.  (x)

| | | |
|---|---|---|
| April 12, 2018 | [signature] | Nautilus Insurance Company |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-561-4300 | 215-561-6661 | cummins@bbs-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY | : |
| 7233 East Butherus Drive | : |
| Scottsdale, AZ 85260 | : |
| v. | : |
| | : |
| 200 CHRISTIAN STREET PARTNERS, LLC | :   NO. |
| 2322 South Street | : |
| Philadelphia, PA 19146 | : |
| and | : |
| VIRGIL PROCACCINO | : |
| 2322 South Street | : |
| Philadelphia, PA 19146 | : |
| and | : |
| ARTHUR ELWOOD | : |
| 2322 South Street | : |
| Philadelphia, PA 19146 | : |
| and | : |
| ZACHARY KLEHR and DEBORAH | : |
| GORDON KLEHR, h/w | : |
| 507 South 12th Street | : |
| Philadelphia, PA 19147 | : |
| and | : |
| HARMAN DEUTSCH CORP. | : |
| 631 North 12th Street | : |
| Philadelphia, PA 19123 | : |
| | : |
| AB CONSTRUCTION, LLC | : |
| 11614 Proctor Place | : |
| Philadelphia, PA 19116 | : |
| | : |
| TIR EOGHAIN CONSTRUCTION INC. d/b/a | : |
| DUGGAN EXCAVATION | : |
| 446 Cedarwood Lane | : |
| Elkins Park, PA 19027 | : |
| | : |
| E&A DRYWALL CORPORATION | : |
| 220-246 North 38th Street | : |
| Camden, NJ 08105 | : |
| | : |
| HIGH END DESIGN INSTALLATIONS, LLC | : |
| 2840 Pine Road, Unit A3 | : |
| Huntingdon Valley, PA 19006 | : |

JELD WEN WINDOWS AND DOORS          :
1162 Keystone Boulevard             :
Pottsville, PA 17901                :
                                    :
MAXI-TECH ROOFING, INC.             :
3345 Ashville Street                :
Philadelphia, PA 19136              :
                                    :
PHILLY BRICK AND STONE              :
RESTORATION, LLC                    :
9311 James Street, Suite B          :
Philadelphia, PA 19114              :
                                    :
TAGUE LUMBER OF MEDIA, INC.         :
325 Media Station Road              :
Media, PA 19063                     :
                                    :
STRAWBRIDGE CROWE LLC t/a J.        :
MALONEY & SON                       :
3 South Route 73, PO Box 329        :
Cedar Brook, NJ 08018               :

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Nautilus Insurance Company, ("Nautilus"), by and through the undersigned counsel hereby requests this Honorable Court to grant it declaratory relief as follows:

1.      This is an action seeking a declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq.* to determine whether Nautilus is obligated to defend 200 Christian Street Partners, Virgil Procaccino and Arthur Elwood in an underlying lawsuit pending in the Court of Common Pleas of Philadelphia County at September Term 2017 No. 02547 and captioned, <u>Zachary Klehr and Deborah Gordon Kleher v. Virgil Procaccino, Arthur Elwood, 200 Christian Street Partners, and Harman Deutsch Corp.</u> ("the underlying action").  A true and correct copy of the first amended complaint filed in the underlying action is attached hereto as Exhibit "A".

2.      On January 18, 2018, 200 Christian Street Partners, Virgil Procaccino and Arthur Elwood filed a joinder complaint in the underlying action, joining AB Construction, LLC; Tir

2

Eoghain Construction, Inc. d/b/a Duggan Excavation; E&A Drywall Corporation; High End Design Installations, LLC; Jeld Wen Windows and Doors; Maxi-Tech Roofing, Inc.; Philly Brick and Stone Restoration, LLC; Tague Lumber of Media, Inc.; and Strawbridge Crowe, LLC t/a J. Maloney & Son as additional defendants.  A true and correct copy of the joinder complaint filed in the underlying action is attached hereto as Exhibit "C" (exhibits omitted).

3.      Nautilus is currently providing a defense to 200 Christian Street Partners, Virgil Procaccino and Arthur Elwood, ("the insureds") under Nautilus's Policy No. NN403063 in effect from October 23, 2013 through October 23, 2014.  A true and correct copy of that policy is attached hereto and marked as Exhibit "B" (premiums redacted).

4.      In this action, Nautilus seeks a declaration that the allegations made by plaintiffs in the underlying action do not constitute an occurrence as that term is utilized in Nautilus's policy and as that term has been defined by Pennsylvania law.  Further, Nautilus seeks a declaration that because the allegations of the underlying action do not constitute an occurrence, Nautilus is not required to defend the insureds in the underlying action and that it may withdraw from their defense in that underlying action.  In the alternative, Nautilus seeks declarations that other portions of its policy provide that Nautilus has no obligation to indemnify the insureds with respect to all or some of the damages which might be imposed upon the insureds even if, *arguendo,* the court should determine that a duty to defend does exist.

5.      Nautilus is incorporated in Arizona. Its principal place of business is located at 7233 East Butherus Drive, Scottsdale, AZ.  It is an approved surplus lines insurance company in Pennsylvania and its policies are sold in Pennsylvania.

6.      200 Christian Street Partners, LLC is a Pennsylvania Limited Liability Company whose members are Virgil Procaccino and Arthur Elwood. Both Procaccino and Elwood are

3

citizens of the Commonwealth of Pennsylvania, with addresses and principal places of business at 2330 South Street, Philadelphia, PA 19146.

7.      Zachary Klehr and Deborah Gordon Kleher are husband and wife, adult, individuals who are citizens of the Commonwealth of Pennsylvania, who reside at 507 South 12th Street, Philadelphia, PA 19147.

8.      Harman Deutsch Corp. is a corporation organized under the laws of the Commonwealth of Pennsylvania with a principal place of business at 631 North 12th Street, Philadelphia, PA 19123.

9.      AB Construction, LLC is a limited liability company organized under the laws of the Commonwealth of Pennsylvania with a principal place of business at 11614 Proctor Place, Philadelphia, PA 19116.  The sole member of AB Construction, LLC is Agim Bajrami who is a citizen of the Commonwealth of Pennsylvania residing at 11614 Proctor Place, Philadelphia, PA 19116.  It is joined in this matter as a nominal defendant for purpose of seeking a declaratory judgment.

10.     Tir Eoghain Construction, Inc., d/b/a Duggan Excavation, is a corporation organized under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 446 Cedarwood Lane, Elkins Park, PA 19027.  It is joined in this matter as a nominal defendant for purpose of seeking a declaratory judgment.

11.     E&A Drywall Corporation is a corporation organized under the laws of the State of New Jersey with a principal place of business located at 220-246 North 38th Street, Camden, NJ 08105.  It is joined in this matter as a nominal defendant for purpose of seeking a declaratory judgment.

12.     High End Design Installations, LLC is a limited liability company organized under

the laws of the Commonwealth of Pennsylvania with a principal place of business located at 2840 Pine Road, Unit A3, Huntingdon Valley, PA 19006.  The members of High End Design Installations, LLC are Nadezhda Svishov, a citizen of the Commonwealth of Pennsylvania residing at 936 Gladwyne Road, Warminster, PA 18974; Volodymyr Sokol, a citizen of the Commonwealth of Pennsylvania residing at 10902 Nandina Court, Philadelphia, PA 19116; and Igor Nagrebelnoi, a citizen of the Commonwealth of Pennsylvania residing at 1110 Selmer Road, Philadelphia, PA 19116.  It is joined in this matter as a nominal defendant for purpose of seeking a declaratory judgment.

13.     Jeld Wen Windows and Doors is a corporation organized under the laws of the State of Oregon with a principal place of business located at 401 Harbor Isles Boulevard, Klamath Falls, Oregon 97601, and a place of business located at 1162 Keystone Boulevard, Pottsville, PA 17901. It is joined in this matter as a nominal defendant for purpose of seeking a declaratory judgment.

14.     Maxi-Tech Roofing, Inc. is a corporation organized under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 3345 Ashville Street, Philadelphia, PA 19136.  It is joined in this matter as a nominal defendant for purpose of seeking a declaratory judgment.

15.     Philly Brick and Stone Restoration, LLC is a limited liability company organized under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 9311 James Street, Suite B, Philadelphia, PA 19114.  The sole member of Philly Brick and Stone Restoration, LLC is William Decker, a citizen of the Commonwealth of Pennsylvania residing at 9311 James Street, Suite B, Philadelphia, PA 19114.  It is joined in this matter as a nominal defendant for purpose of seeking a declaratory judgment.

16.     Tague Lumber of Media, Inc. is a corporation organized under the laws of the

Commonwealth of Pennsylvania with a principal place of business located at 325 Media Station Road, Media, PA 19063.  It is joined in this matter as a nominal defendant for purpose of seeking a declaratory judgment.

17.     Strawbridge Crowe LLC t/a J. Maloney & Son is a limited liability company organized under the laws of the State of New Jersey with a principal place of business located at 3 South Route 73, Cedar Brook, NJ 08018.  After reasonable investigation, the identities of the members of Strawbridge Crowe LLC are not publicly available.  It is averred, upon information and belief, the William Crowe is a member of this company, who is a citizen of the State of New Jersey.  It is further averred, upon information and belief, that no members of this company are citizens of the State of Arizona.  It is joined in this matter as a nominal defendant for purpose of seeking a declaratory judgment.

18.     The amount in controversy exceeds $75,000.00 in that the underlying action seeks damages in excess of $150,000.00 and the Nautilus policy in question has an "each occurrence" limit of $1,000,000.00.  Thus, this court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

19.     This matter arises from a first amended complaint filed in the underlying action which alleges that a home built for Zachary and Deborah Klehr by 200 Christian Street Partners, Procaccino and Elwood was defectively designed and constructed and that 200 Christian Street Partners, Procaccino and Elwood made numerous and various misrepresentations to the Klehrs concerning the construction of the home and efforts allegedly taken to remediate construction defects.  Based on these allegations, the complaint in the underlying action pleads six causes of action against the insureds: (1) violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law; (2) breach of contract; (3) breach of implied warranties; (4) negligence in the construction of the home; (5) negligence in the selection and supervision of employees and

subcontractors to build the home; and (6) civil conspiracy.  Each of the counts of the complaint seeks "actual damages," "treble damages," "punitive damages," other "consequential damages" and damages for the diminution of value in the home allegedly caused by the defendants' shoddy work and misrepresentations.

20.     The defects described in the underlying action are alleged to have manifested themselves beginning on December 16, 2013.  Accordingly, although Nautilus issued policies to Christian Street Partners for policy years October 23, 2012 through October 23, 2013, October 23, 2014 through October 23, 2015, and October 23, 2015 through October 23, 2016, the only applicable policy under the provisions of the policies themselves and applicable Pennsylvania law is Policy No. NN403063 in effect from October 23, 2013 through October 23, 2014.

21.     That policy contains the following insuring agreement:

**SECTION I- COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY**
**DAMAGE LIABILITY**

**1.      Insuring Agreement**

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)      The amount we will pay for damages is limited as described in Section Ill – Limits Of Insurance; and

(2)      Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b.    This insurance applies to "bodily injury" and "property damage" only if:

(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)    The "bodily injury" or "property damage" occurs during the policy period; and

(3)    Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

22.    The insuring agreement states that in order to be covered "property damage" must be caused by an "occurrence" that takes place in the "coverage territory".  The policy contains the following definition of "occurrence":

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

23.    The policy also contains the following exclusion:

**a. Expected Or Intended Injury**
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

8

24.     The policy also contains the following exclusion:

**j. Damage To Property**
"Property damage" to:
. . . .
(6)  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
. . . .
Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.
Paragraph (6) of this exclusion does not apply to "property damage" included in the "products completed operations hazard".

25.     The policy also contains the following definition:

16.     "Products-completed operations hazard":
a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)  Products that are still in your physical possession; or

(2)  Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a)     When all of the work called for in your contract has been completed.

(b)     When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c)     When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project. Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b.     Does not include "bodily injury" or "property damage" arising out of:

9

    (1)    The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    (2)    The existence of tools, uninstalled equipment or abandoned or unused materials; or

    (3)    Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products completed operations are subject to the General Aggregate Limit.

26.    The policy also contains the following definition:

21. "Your product":

    a.    Means:

        (1)    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            (a)    You;
            (b)     Others trading under your name; or
            (c)    A person or organization whose business or assets you have acquired; and

        (2)    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b.    Includes

        (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        (2)    The providing of or failure to provide warnings or instructions.

    c.    Does not include vending machines or other property rented to or located for the use of others but not sold.

27.    The policy also contains the following definition:

22. "Your work":

        a.     Means:

           (1)   Work or operations performed by you or on your behalf; and

           (2)   Materials, parts or equipment furnished in connection with such work or operations.

        b. Includes

           (1)   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

           (2)   The providing of or failure to provide warnings or instructions.

28.     The policy also contains the following endorsement:

      THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EXCLUSION - PUNITIVE OR EXEMPLARY DAMAGES

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY
COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE
PART
The following exclusion is **added to 2. Exclusions of Section 1**:

This insurance does not apply to punitive or exemplary damages.

    All other terms and conditions of this policy remain unchanged.

29.     The policy also contains the following exclusion:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
## EXCLUSION - MICROORGANISMS, BIOLOGICAL ORGANISMS, BIOAEROSOLS OR ORGANIC CONTAMINANTS

This endorsement modifies insurance provided under the following:

11

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusions are **added** to **2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability, Coverage B - Personal And Advertising Injury Liability and Coverage C – Medical Payments:**

This insurance does not apply to:

1.     "Bodily injury", "property damage", "personal and advertising injury", or medical payments arising out of, related to, caused by or in any way connected with the exposure to, presence of, formation of, existence of or actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any microorganisms, biological organisms, bioaerosols or organic contaminants including, but not limited to, mold, mildew, fungus, spores, yeast or other toxins, mycotoxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

2.     Any loss, cost or expense arising out of any:

a.     Request, demand, order, or requirement by or on behalf of any authority, governmental or otherwise, that any insured or others abate, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, remediate or dispose of, or in any way respond to, or assess the effects of microorganisms, biological organisms, bioaerosols or organic contaminants including, but not limited to, mold, mildew, fungus ,spores, yeast, or other toxins, mycotoxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion; or

b.     Claim or "suit" by or on behalf of any authority, governmental or otherwise, for damages because of abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of microorganisms, biological organisms, bioaerosols or organic contaminants including, but not limited to, mold, mildew, fungus, spores, yeast, or other toxins, mycotoxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

12

> We shall have no duty to investigate, defend, or indemnify any insured in any action or proceeding alleging damages arising out of direct or indirect contact with, any exposure to, or the ingestion, inhalation or absorption of any microorganisms, biological organisms, bioaerosols, or organic contaminants including, but not limited to, mold, mildew, fungus, spores, yeast or other toxins, mycotoxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.
> This exclusion does not apply to any fungi, bacteria, microorganisms or biological organisms that are, are on, or are contained in, a good or product intended for bodily consumption.

All other terms and conditions of this policy remain unchanged.

## COUNT I – DECLARATORY JUDGMENT/
## ABSENCE OF OCCURRENCE

30.    Nautilus incorporates herein by reference the averments of paragraphs 1-29 of this complaint as though here set forth at length.

31.    Under Pennsylvania law, an insurer's duty to defend an insured is determined by the allegations of the complaint in question.

32.    The allegations in the amended complaint in the underlying action do not aver an occurrence as that term is defined in Nautilus's policy and applicable Pennsylvania law.  As a result, there is no coverage under the Nautilus policy for the underlying action and Nautilus therefore is entitled to a declaration that it has no obligation under the Nautilus policy to defend or indemnify 200 Christian Street, LLC, Virgil Procaccino or Arthur Elwood in connection with the underlying action.  Nautilus requests an order permitting it to withdraw from the defense of those three parties in the underlying action.

## COUNT II – DECLARATORY JUDGMENT/EXPECTED
## OR INTENDED INJURY

33.    Nautilus incorporates herein by reference the averments of paragraphs 1-32 inclusive of this complaint as though same were here set forth at length.

34.    The amended complaint in the underlying action avers ( ¶ 72) that the statements

made by Virgil Procaccino and Arthur Elwood to the plaintiff concerning the construction of the home and source of the problems with it were known to be false, (or that the defendant should have known that the representations were false); that the defendants Procaccino and Elwood took profits from 200 Christian Street Partners so as to make that company financially incapable of meeting its repair and remediation obligations, (¶ 191); that the defendants deliberately ignored applicable building codes and standards knowing that in doing so they would permit water to infiltrate the home (¶ ¶ 158-165); that the defendants actions were "knowing . . . intentional [and taken with] an evil motive and actual malice (¶ 196); and that the defendants conspired and agreed among themselves to fraudulently represent to Milo that the home in question would be designed and constructed without major defects when in fact the defendants had no intention of doing so (¶ 240).

35.     These and other averments of the amended complaint plead harm "expected or intended from the standpoint of the insured".

36.     Nautilus therefore seeks a declaration that there is no coverage under Coverage A of the Nautilus policy for the damages sought by the plaintiffs in the underlying action because all such damage was expected or intended from the standpoint of Nautilus's insureds or substantially certain to result from their acts or omissions and that, therefore, Nautilus has no obligation to indemnify 200 Christian Street Partners, LLC, Arthur Elwood or Virgil Procaccino in connection with the underlying action.

### COUNT III – DECLARATORY JUDGMENT/ EXCLUSION 2. j.(6)

37.     Nautilus incorporates herein by reference as though here set forth at length the averments of paragraphs 1-36.

38.     Exclusion 2. j.(6) of the Nautilus policy provides that there is no coverage for that

14

particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

39.     The first amended complaint in the underlying action alleges almost exclusively damages for work performed by or on behalf of 200 Christian Street Partners that has to be restored, repaired or replaced because the work was incorrectly performed.  Nautilus, therefore, seeks a declaration that there is no coverage under the policy for all work incorrectly performed by or on behalf of Nautilus's insured in the first place.

## COUNT IV – DECLARATORY JUDGMENT/PUNITIVE DAMAGES EXCLUSION

40.     Nautilus incorporates herein by reference the averments of paragraphs 1-39 of this complaint as though here set forth at length.

41.     The first amended complaint in the underlying action seeks punitive damages with respect to each count of that amended complaint.

42.     The Nautilus policy excludes coverage for punitive and exemplary damages.

43.     Nautilus, therefore, requests this court to declare that there is no coverage under the Nautilus policy for any award of punitive or exemplary damages based on the punitive and exemplary damage exclusion of the Nautilus policy.

## COUNT IV – DECLARATORY JUDGMENT/EXCLUSION - MICROORGANISMS, BIOLOGICAL ORGANISMS, BIOAEROSALS OR ORGANIC CONTAMINANTS

44.     Nautilus incorporates herein by reference the averments of paragraph 1-43 of this complaint as though here set forth at length.

45.     The amended complaint in the underlying action is replete with allegations that the defective construction lead to the development of mold, mildew and fungus.

46.     The policy endorsement excluding coverage for "microorganisms, biological

15

organisms, bioaerosols or organic contaminants" provides, in part:

> We shall have no duty to investigate, defend or indemnify any insured in any action or proceeding alleging damages arising out of direct or indirect contact with, any exposure to, or the ingestion, inhalation or absorption of any microorganisms, biological organisms, bioaerosols or organic contaminants including, but not limited to, mold, mildew, fungus . . . .

47.    In the alternative, Nautilus seeks a declaration that it has no obligation to indemnify the insureds for any property damage arising out of, related to, caused by or in any way connected with the presence of such organisms.

WHEREFORE, Nautilus respectfully requests that this court enter declaratory judgments in its favor as set forth in each of the counts of this complaint and, on the basis of the averments set forth in Counts I and IV of this complaint, enter an order declaring that Nautilus is entitled to withdraw the defense it is currently providing to 200 Christian Street Partners, LLC, Arthur Elwood and Virgil Procaccino in in the underlying action.

**BENNETT, BRICKLIN & SALTZBURG LLC**

BY: _____
    NICHOLAS A. CUMMINS
    Attorney I.D. No.  203238
    1601  Market Street
    16th Floor
    Philadelphia, PA 19103
    215-551-4300
    cummins@bbs-law.com
    Attorneys for Nautilus Insurance Company

Date:  April 12, 2018

# Exhibit A

**To Complaint for Declaratory Judgment**
**Nautilus Insurance Company v. 200 Christian Street Partners, LLC**

**BOCHETTO & LENTZ, P.C.**
By:    George Bochetto, Esquire
         Peter R. Bryant, Esquire                     *Attorney for Plaintiffs*
Attorney I.D. Nos. 27783, 312328
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900
(215) 735-2455 fax
gbochetto@bochettoandlentz.com
pbryant@bochettoandlentz.com

---

| | | |
|---|---|---|
| **ZACHARY KLEHR AND** | : | |
| **DEBORAH GORDON KLEHR h/w** | : | |
| 507 S. 12th Street | : | COURT OF COMMON PLEAS |
| Philadelphia, PA 19147 | : | PHILADELPHIA COUNTY |
| | : | PENNSYLVANIA |
| *Plaintiff* | : | |
| | : | |
| v. | : | SEPTEMBER TERM 2017 |
| | : | NO.: 02547 |
| **VIRGIL PROCACCINO** | : | |
| 2320 South Street | : | |
| Philadelphia, PA 19146 | : | |
| | : | |
| And | : | |
| | : | |
| **ARTHUR ELWOOD** | : | JURY TRIAL DEMANDED |
| 2320 South Street | : | |
| Philadelphia, PA 19146 | : | |
| | : | |
| And | : | |
| | : | |
| **200 CHRISTIAN STREET PARTNERS** | : | |
| 2320 South Street | : | |
| Philadelphia, PA 19146 | : | |
| | : | |
| And | : | |
| | : | |
| **HARMAN DEUTSCH CORP.** | : | |
| 631 N. 12th Street | : | |
| Philadelphia, PA 19123 | : | |
| *Defendants* | : | |

1

## FIRST AMENDED COMPLAINT

Plaintiffs Zachary Klehr ("Zach") and Deborah Gordon Klehr ("Deborah") (collectively the "Klehrs" or "Plaintiffs") by and through their attorneys, Bochetto & Lentz, P.C. ("B&L"), aver as follows in support of their First Amended Complaint against Defendants Virgil Procaccino ("Procaccino"), Arthur Elwood ("Elwood"), 200 Christian Street Partners ("200 CSP") (collectively "200 CSP Defendants"), and Harman Deutsch Corp.("Harman").

## I.        NATURE OF THE ACTION

1.        This case is brought under the Pennsylvania Unfair Trade Practices and Consumer Protection Law regarding the 200 CSP Defendants' fraudulent building, marketing, and selling to Plaintiffs an unsafe and defectively constructed home priced at ***$1,650,000***.

2.        This action is brought against Defendant Harman for its recklessness in designing the Home without ***mandated*** structural elements, and its knowing failure to inform Plaintiffs of the defect, despite remedying the defect on subsequent, ***identical*** homes on the same block.

3.        Zach and Deborah Klehr are the parents of two young children who purchased the newly-constructed home located at 507 South 12th Street ("the Home") with the intention of raising their family in the City of Philadelphia, and experiencing all that city life has to offer for young families.

4.        Procaccino and Elwood own and operate Defendant 200 CSP for the purpose of building and selling luxury homes in the City of Philadelphia, and were responsible for the construction of the Home.

5.        Procaccino and Elwood specifically focus their marketing on the "$1 million-plus market" by touting "'the wow factor'" of their homes and expressly representing that they do not

2

"skimp" on construction.  (*See* Exhibit A, August 18, 2014 Philadelphia Inquirer Article "Center City residential developers build on the 'wow' factor.")

6.     The 200 CSP Defendants – by and through representations made individually by Procaccino and Elwood – directly represented to Zach and Deborah that the Home was not only designed and built according to applicable building codes, but was constructed according to best standards in the industry.

7.     These representations were materially false.

8.     In reliance upon the 200 CSP Defendants' representations, Plaintiffs purchased the Home for $1,650,000.

9.     In addition to 200 CSP Defendants' misrepresentations, Defendant Harman recklessly and negligently designed structural elements of the Home in contravention of the Philadelphia Building Code.

10.    Defendant Harman is a well-known architectural firm in Philadelphia.

11.    Defendant Harman expressly represents that it provides "architectural excellence" by "a commitment to coordinate and balance the needs of our clients, the aesthetics of a project and ***the requirements of the code*** to deliver an end product that is both unique in design while feasible in constructability, budget and tectonics."  (*See* Exhibit B, Harman Deutsch Website.)

12.    Accordingly, Defendant Harman's own marketing materials admit that compliance with the applicable building code is ***required.***

13.    Despite that, Defendant Harman failed to design the exterior brick wall in compliance with code-mandated structural and safety requirements.

14.    Further, while Defendant Harman realized its negligence after designing the Home, and included the missing structural components in subsequent drawings for identical

3

homes on the same block, it failed to take any action to remedy the defect, instead concealing its recklessness by not informing Plaintiffs of the defect.

15.     In making the decision to purchase the Home from Defendants, Plaintiffs reasonably relied on the express and implied representations of quality, workmanship and the promises of full compliance with all applicable building codes and industry standards.

16.     As actually constructed, the Home is so riddled with construction defects that the Home is subject to moisture infiltration, leaks, and potential life, safety, and health hazards if not repaired.

17.     Indeed, the design and construction of the exterior wall is *missing* details specifically mandated by the code to ensure that it does not collapse.

18.     As a result of these significant defects and safety hazards, Plaintiffs have sustained and continue to sustain the following ongoing damages:

     i.   Ownership of a Home in need of profound remediation;
    ii.   Diminution of the value of the Home, and perhaps the reality that they may never be able to sell the Home;
  iii.   Significant and ongoing professional inspection, engineering and remediation fees;
  iv.   Temporary relocation costs; and
   v.   Attorneys' fees and costs of suit.

## II.     PARTIES

19.     Plaintiff, Zachary Klehr is an individual that may be served at 507 S. 12th Street, Philadelphia, PA 19147, and one of the owners of the Home.

20.     Plaintiff Deborah Gordon Klehr is an individual that may be served at 507 S. 12th Street, Philadelphia, PA 19147, and one of the owners of the Home.

21.     Defendant, 200 Christian Street Partners, is a limited liability company formed in Pennsylvania and may be served at 2320 South Street, Philadelphia, PA 19146.

22.     Defendant, Virgil Procaccino, is an individual who may be served at 2320 South Street, Philadelphia, PA 19146.  Procaccino is a partner in 200 CSP and individually made many of the fraudulent representations directly to Plaintiffs.

23.     Defendant, Arthur Elwood, is an individual who may be served at 2320 South Street, Philadelphia, PA 19146.  Elwood is a partner in 200 CSP and individually made many of the fraudulent representations directly to Plaintiffs.

24.     Defendant Harman Deutsch Corp. is a corporation formed in Pennsylvania that may be served at 631 N. 12th Street, Philadelphia, PA 19123.  Harman Deutsch is a licensed professional architecture firm that designed the Home.  Plaintiffs are asserting a professional liability claim against Harman.

### III.     JURISDICTION & VENUE

25.     This Court has subject matter jurisdiction over this matter pursuant to 42 Pa.C.S.A. § 931(a) and has personal jurisdiction pursuant to 42 Pa.C.S.A. § 5301 as Defendant is incorporated and registered in the Commonwealth of Pennsylvania.

26.     Venue is proper in the Court of Common Pleas of Philadelphia County under Rules 1006 and 2179 of the Pennsylvania Rules of Civil Procedure as the transaction and/or occurrence out of which the causes of action took place occurred in Philadelphia County.

### IV.     FACTS COMMON TO ALL COUNTS

**A.   <u>The Sale of the Home.</u>**

27.     Zachary and Deborah Klehr are a married couple with two young sons, ages 4 years old and 22 months at the time that the Klehrs moved into the Home.

5

28.    In or about 2013, the Klehrs began to look for a new home in the City of Philadelphia.

29.    The Klehrs specifically sought a home that would allow them to live and raise their children in the City of Philadelphia.

30.    Living in Philadelphia was particularly important as a result of Deborah's career as an executive director of a Philadelphia based non-profit, and Zach's work in finance at a Philadelphia-based firm.

31.    The Klehrs specifically sought to purchase a newly constructed home that would not require any repair or rehabilitation, and would not contain any defects that would necessitate expensive remediation or interruption in the raising of their two children.

32.    The 200 CSP Defendants routinely and regularly represented themselves to the public as high-end builders of homes in the "$1,000,000 plus market" in Philadelphia, which was the market Plaintiffs were interested in.

33.    Indeed, Procaccino and Elwood were interviewed by the Philadelphia Inquirer, during which they touted their superior homes, including the "wow factor" of the design, and publicly represented that they do not "skimp" on the construction or materials.  (*See* Exhibit A.)

34.    The 200 CSP Defendants expressly represented to Plaintiffs that that the design and construction of the home was of extremely high quality and according to best-standards in the industry, and that any minor defects in the Home would be remediated prior to closing.

35.    As a result of these representations, on or about March 22, 2013, Plaintiffs entered into an Agreement of Construction and Sale for the purchase of the Home. which was to be substantially completed in time for settlement by September 15, 2013.  (*See* Exhibit "C," the Agreement of Sale.)

36.     However these representation were *false.*

37.     In addition to misrepresenting the quality of the Home, the 200 CSP Defendants breached the implied warranties of habitability and fitness for a particular use.

38.     While the Agreement of Sale attempts to disclaim all implied warranties, such a disclaimer is void under Pennsylvania law for public policy reasons, as there was absolutely no discussion or negotiation regarding the important legal ramifications of any purported renunciation of Plaintiffs' implied warranty rights, or contradiction of all its marketing representations.  (*See Tyus v. Resta*, 476 A.2d 427, 328 Pa.Super.11 (1984); *see also Bennet v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145 (Pa.Super. 2012).)

39.     Accordingly, regardless of any purported and unenforceable disclaimer, the 200 CSP Defendants owed the Klehrs the implied warranties of:  1) a safe and habitable structure, free of faulty materials; 2) construction in a workmanlike manner; 3) construction according to sound building and engineering standards; and 4) compliance with all applicable building codes.

40.     As detailed below, despite the 200 CSP Defendants representations of superb quality, workmanship and design, all Defendants failed to build a home that complied with even basic building codes and minimally accepted standards of workmanship and construction.

41.     As a direct and proximate result of all Defendants' actions, Plaintiffs incurred significant damages as more fully described below.

**B.   The 200 CSP Defendants Breach the Agreement and Misrepresent the Status of the Construction of the Home.**

42.     The 200 CSP Defendants' misrepresentations began prior to the completion of the construction of the Home, immediately after the Agreement of Sale was executed.

43.     The Agreement of Sale required the Home be substantially completed in time for settlement by September 15, 2013.  **Ex. C** at ¶5.

7

44.     Further, the Agreement of Sale required that all representations and warranties regarding the construction of the Home would remain true at the time of settlement.  **Ex. C** at ¶5.1.

45.     Despite settlement being scheduled for September 15, 2013, the 200 CSP Defendants were not nearly finished with the construction of the Home on that date.

46.     Accordingly, pursuant to ¶5 of the Agreement, the 200 CSP Defendants were entitled to delay settlement *once* for 30 days.

47.     Despite this, substantial completion of the construction was not complete within 30 days of September 15, 2013.

48.     The Klehrs again extended settlement based on the representations that substantial completion of the construction would occur imminently.

49.     Again, substantial completion of construction did not occur in the next 30 days.

50.     Finally, in early December, the 200 CSP Defendants represented that settlement could occur on December 6, 2013.

51.     Zach expressly asked Art Elwood if the 200 CSP Defendants had a Certificate of Occupancy.

52.     Elwood expressly represented that the 200 CSP Defendants had a Certificate of Occupancy in hand.

53.     Despite this representation, the 200 CSP Defendants did not have a Certificate of Occupancy, and settlement could not occur on December 6, 2017, but was once again forced to be extended.

8

54.     Accordingly between March 22, 2013 and December 10, 2013 the Klehrs were not in possession of the Home and the Home had not yet been fully completed in breach of the Agreement.

55.     Despite this, and as a result of the representations made by Procaccino and Elwood regarding the good faith efforts to ensure that the Home was properly constructed, Plaintiffs agreed to make settlement on the Home and began occupying the Home in late December 2013.

C.  **The Home Begins Experiencing Moisture Infiltration**

56.     The Home began experiencing serious problems with water almost immediately after settlement.

57.     The Klehrs first identified a leak in the sump pump room which was originally believed to be due to a leaky pipe on December 16, 2013.

58.     It was discovered that the water was leaking in through the wall.

59.     Further, on or about January 10, 2014, Plaintiffs emailed the 200 CSP Defendants an updated "punch list" that detailed the continuing issues in the Home.

60.     Among the continuing defects in the Home were a failure to properly seal the windows, as well as the sliding glass door.

61.     Indeed, the sliding glass door had heavy condensation throughout, demonstrating moisture infiltration issues.

62.     Defendants – by and through the representations of Procaccino and Elwood – repeatedly and expressly assured the Klehrs that Defendants would repair any continuing problems at the Home.

63.     Despite such representations, the defects continued to appear throughout the Home.

64.     In April 2014, Plaintiffs discovered that the sliding glass door was leaking into the kitchen.

65.     Water was dripping into the Home and warping the floorboards and damaging the ledge above the doorframe.

66.     Again, Art Elwood and Virgil Procaccino expressly represented that the issue was minor and would be repaired.

67.     However, instead of appropriately repairing it, the 200 CSP Defendants simply "patched" it, which did not fix the underlying defect.

68.     In May 2014, the leak in the sliding glass door re-appeared, despite the 200 CSP Defendants' representations that it had been repaired.

69.     In addition, in May 2014, Plaintiffs discovered a new leak in their master bedroom ceiling.

70.     Elwood and Procaccino each expressly assured the Klehrs that the issue was minor, and that they would fix the leak in the master bedroom and remediate the water damage.

71.     Elwood and Procaccino further represented that the leak was isolated to the master bedroom.

72.     As it turned out, such representations by Elwood Procaccino were utterly false, and Procaccino knew or should have known that the leak in the master bedroom was caused by major defects in the building envelope that allowed moisture to seep into the Home.

73.     In July 2014, the Klehrs discovered that water was leaking into the back of the Home.

10

74.     The Klehrs confirmed with a water restoration service that the leak was not from an interior pipe, but was instead because the Home was not "watertight."

75.     Again, the 200 CSP Defendants– by and through the representations of Elwood and Procaccino – assured Plaintiffs that they would fix the leak.

76.     That representation was false, as the 200 CSP Defendants failed to repair the Home to make it watertight throughout.

77.     In August 2014, Plaintiffs again discovered water leaking under the kitchen floor near the sliding glass door.

78.     As before, this water infiltration warped the floorboards.

79.     Again, Elwood and Procaccino agreed to repair the cause of the water infiltration.

80.     At no time did the 200 CSP Defendants reveal to Plaintiffs that the cause of any of the incidents of water infiltration was a result of the wholesale defective construction of the Home.

81.     Instead, at all times material, the 200 CSP Defendants represented that each incident of water infiltration was a separate issue that could be resolved without the removal of the Home's cladding.

82.     Indeed the 200 CSP Defendants lulled Plaintiffs into believing the water infiltration in the master bedroom had been repaired.

83.     In 2014, the Klehrs retained Smart Moves Home Inspection and Avanti Plumbing to provide inspection reports regarding the Home, both of which reported deficiencies and defects in the construction of the Home

84.     As a result, the Klehrs sought an in-person meeting with Procaccino and Elwood to discuss the serious defects with the Homes.

85.     On Wednesday September 24, 2014, the Klehrs met with Procaccino and Elwood at the Home.

86.     The Klehrs provided Procaccino and Elwood with the most recent punchlist, as well as the Avanti Report and the Smart Moves Report.

87.     On or about October 7, 2014, Elwood emailed Zach and informed him that the 200 CSP Defendants would be "coming on Wednesday with a lift and the siding subcontractor. We will be reviewing and making corrective action if necessary."  (*See* October 7, 2014 Email attached as Exhibit "D.")

88.     After Elwood went with the siding subcontractor, he represented that the sealing of the siding was complete and "the leak was from one of your windows."

89.     Despite that, on October 15, 2014, the Klehrs discovered yet another leak above the sliding door on the roof deck despite Elwood's express representation that it had been repaired *one day earlier*.

90.     On October 24, 2014, the Klehrs smelled mildew in their basement.

91.     Upon taking apart their closet in the basement, the Klehrs discovered extensive mold damages, as well as standing water.

92.     Again, Procaccino expressly represented that the 200 CSP Defendants would "take corrective measures" to ensure that the "problem is solved."

93.     Despite that, approximately two weeks later, the Klehrs discovered water coming into the Home through the back wall, subjecting the basement, the ceiling of the sump pump room, and the floor in the kitchen to additional water damage.

94.     Further, the Klehrs discovered additional leaks, including a leak coming from the front stoop and stairs on the 12th Street side of the Home.

95.     In addition, on November 19, 2015, the leak in the master bedroom reappeared.

96.     Between July 2014 and November 2015, Plaintiffs discovered no less than eight (8) leaks, including multiple incidents of leaking in portions of the Home that Defendants expressly represented were fixed.

97.     In addition to the constant leaks, the Home experienced other substantial defects.

98.     By way of example, the air conditioning failed on numerous occasions, resulting in the Klehrs and their children having to sleep in the basement due to the heat in the Home.

99.     The defects in the air conditioning were recurring, and the Klehrs paid substantial amounts to resolve those defects.

100.    Similarly, the siding was not fully sealed, a defect visible to the eye.

101.    At all times material, the 200 CSP Defendants would respond to the water infiltration, agree to take a corrective action, and lulled Plaintiffs into believing the problem was repaired.

102.    Despite Defendants' representations that the cause of the moisture and water infiltration had been repaired, the Home continued to experience water infiltration.

103.    At no time did the 200 CSP Defendants inform Plaintiffs that the water infiltration would continue or that its cause could not be repaired without significant remediation throughout many other areas of the Home.

104.    At no time did the 200 CSP Defendants inform Plaintiffs that the water infiltration was the result of significant construction defects or a failure to follow design specifications.

105.    Plaintiffs continually relied on the 200 CSP Defendants express representations that the 200 CSP Defendants had cured the cause of the infiltration.

106.     Further, Procaccino and Elwood failed to disclose that the water infiltration was a direct result of Defendants' failure to build the Home to code with an effective moisture-barrier.

107.     Plaintiffs have relied on those representations and omissions.

108.     Moreover, the 200 CSP Defendants actively concealed the manner in which the Home was built from the Klehrs

109.     Despite being ***contractually obligated*** to deliver the "as-built" design plans for the Home, the 200 CSP Defendants refused to do so, despite multiple requests by the Klehrs.

**D.  <u>The Klehrs Retain Independent Home Inspectors.</u>**

110.     In 2016, the Klehrs hired Northeast Inspection and Frank Hendron to conduct an initial moisture infiltration assessment (the "Initial Moisture Test").

111.     The Initial Moisture Test was conducted on February 4, 2017, and suggested further invasive inspection.  (*See* February 4, 2017 Initial Moisture Test attached hereto as Exhibit "E.")

112.     The Initial Moisture Test identified multiple areas of concern, including blocked drainage behind the brick façade, improper installation of the front stoop, and improper foundation height.  **Ex. E.**

113.     As a result, on June 12, 2017, the Klehrs had additional invasive testing conducted by Northeast, as well as Rimkus Consulting.

114.     Rimkus Consulting reviewed for architectural and construction defects, as well as moisture infiltration deficits

115.     The result of these inspections was devastating: the Home was rife with construction defects that were causing structural damage and massive water infiltration.

14

116.    Despite Defendants' representations that the causes of the water infiltration throughout the home had been repaired, it was now clear that significant additional water infiltration had occurred throughout other parts of the Home, causing internal damage that was not immediately apparent to the Klehrs at the time all previous issues mentioned above, had surfaced.

117.    Such water infiltration issues are currently on-going, have never been adequately repaired, and are causing ongoing damage to the Home.

118.    Defendants' multiple representations about the appropriate "fix" purposefully lulled the Klehrs into believing that the necessary repairs had been made.

119.     The independent inspection further revealed the Home was ***not*** built according to industry standards, nor even the minimal requirements of the International Building Code ("IBC").

120.    Further, the Home was not built according to the design of the architectural drawings advertised on Defendants' website, nor the actual architectural drawings used to obtain the building permits from the City of Philadelphia.

121.    On July 17, 2017, Rimkus Consulting produced a summary report (the "Rimkus Report") of the construction defects in the Home which identified significant life-safety issues as well as code non-compliance.  (*See* Exhibit F, July 17, 2017 Rimkus Report.)

122.     These defects were not limited to the water infiltration and building envelope failures, but included structural defects and life-safety risks.

123.    Among the most flagrant construction defects noted in the Rimkus Report are the following:

     i.    A foundation wall below grade and not to code;

15

    ii.     Openings and gaps in the water-resistive barrier system beneath the exterior cladding;

    iii.    Lack of, inadequate, and/or improper flashing in at least six different locations throughout the building;

    iv.    Improper support of the fourth-floor brick veneer on a water-soaked, delaminating and structurally weak Parallam beam – ***without a structural steel angle***;

    v.    Deficient brick veneer ties that fail to adequately secure the brick veneer; and

    vi.    Lack of relief angles for the upper portions of the brick veneer to ensure that the brick veneer does not collapse on itself.

124.    The Rimkus Report noted that the improper foundation wall height, gaps in the water-resistive barrier system, and the inadequate and missing flashing throughout the Home permitted moisture intrusion and cause moisture migration and interior damage.

125.    Further, the Rimkus Report noted that the structural problems will continue to "affect the long-term performance of the building."

126.    Such long-term performance will lead to life-safety risks that are life-threatening to any inhabitants of the Home, until completely remediated.

127.    As an example only, the combination of the deficient brick veneer ties and the lack of relief angles makes it a near-certainty that the brick veneer will crack and collapse if not repaired.

128.    Similarly, the lack of a code-compliant foundation renders the Home structurally unstable.

129.    In addition, a comparison of the architectural drawings and the finished Home demonstrates that the Home was not constructed in compliance with those architectural drawings.

130.    Similarly, on August 7, 2017, Northeast produced a summary report. (*See* Exhibit G, August 7, 2017 Northeast Report.)

131.    The Northeast Report noted additional code defects.

16

132.    Pursuant to 2009 IBC Section 1403.2 "[t]he exterior wall envelope shall be designed and constructed in such a manner as to prevent the accumulation of water within the wall assembly."

133.    The Northeast Report demonstrated that the plywood in the wall assembly had "reached the fibre saturation point, meaning the plywood is **_saturated to the point it cannot absorb any more water_**" in direct violation of 2009 IBC Section 1403.2.  **Ex. G.**

134.    Similarly, 2009 IRC Section 1405.4 requires that "[f]lashing **_shall_** be installed in such a manner so as to prevent moisture from entering the wall."

135.    The flashing installed on Home was so defectively installed that it actually directed water **_into_** the wall.  **Ex. G.**

136.    Indeed, some of the flashing was installed **_backwards_**, draining **_behind_** the flashing into the wall and basement.  **Ex. G.**

137.    Finally, 2009 IBC Section 1405.4.2 requires the installation of functioning weep holes to assist with water drainage.

138.    The Northeast report demonstrated that the weep holes installed did not **_function_**.

**E.  Defendant Harman Deutsch Negligently Designed The Home.**

139.     As set forth more fully above, the Rimkus Report determined that the fourth floor brick veneer was improperly supported by the wood beam and framing above the third-floor, rear master bedroom.

140.    This defect occurred as a direct and proximate result of Defendant Harman's recklessness in designing the Home.

141.    The Home was the first of a series of homes built on the 500 block of South 12th street.

142.    The Home was built in "Phase 1" of the construction.

143.    The Phase 1 Drawing Sheet prepared by Harman *did not show* a structural steel angle support for the fourth-floor brick veneer.  (*See* Phase 1 Drawing Sheet attached as Exhibit "H.")

144.    Pursuant to IBC 2104.1.6 "masonry *shall not* be supported on wood girders or other forms of wood construction . . . ."

145.    As set forth more fully above, Philadelphia Building Code incorporates the IBC for all structures – including residential structures – that are four stories or taller.

146.    Despite its responsibility to design a safe, habitable building, Defendant Harman designed the Home to include brick masonry that was supported by a wood Parallam beam *without* the support of a structural steel angle.

147.    Structural steel angles are necessary to ensure that the structural integrity of the building is not compromised.

148.    Accordingly, a failure to comply with the Philadelphia Building Code's requirements for the support of a *multi-story brick wall* is outrageous, and demonstrates a reckless indifference to the life and safety of Plaintiffs as well as the public at large.

149.    Defendant Harman recognized this design defect during the construction of other homes on the 500 Block of South 12th Street, as the structural steel angle *was included* in subsequent design drawings.

150.    Despite that Defendant Harman discovered the unsafe design defect, and corrected it on subsequent homes, Defendant Harman *never corrected the Klehr Home.*

151.    Further, Defendant Harman never *even notified* the Klehrs of the absence of the structural steel angle.

18

152.    Instead, Defendant Harman remained silent, and allowed the Klehrs – a family of four – to reside in a home that Defendant Harman *knew* was unsafe.

153.    Defendant Harman's actions in failing to appropriately design the Home, and its silence after learning of its negligent design, was outrageous and demonstrates a reckless indifference to the safety of Plaintiffs.

**F.    The 200 CSP Defendants' Pattern and Practice of Construction of Defective and Faulty Homes.**

154.    The Klehrs have learned that some of their neighbors have experienced similar water infiltration problems with their homes, which were constructed on the 500 block of S. 12th Street by the 200 CSP Defendants.

155.    Many of the homeowners have experienced the same misleading "solutions" and easy "fixes" performed by the 200 CSP Defendants on the Home.

156.    Further, upon information and belief, some of the same Homes are afflicted with the same structural and architectural defects.

157.    The 200 CSP Defendants have thus acted in a concertedly deceptive fashion over an extended period of time affecting an extensive number of purchasers of residential homes.

**G.    The 200 CSP Defendants' Knowledge of the Defects in the Home.**

158.    The 200 CSP Defendants allegedly constructed the Home in accordance with and pursuant to specified plans and architectural drawings which, among other things, were submitted to the City of Philadelphia in order to secure a building permit.

159.    A review of those plans, however, shows the Home was not constructed in accordance with the architect's designs, and that neither the City of Philadelphia, nor Plaintiff were ever so advised.

160.     In so doing, the 200 CSP Defendants – by and through Procaccino and Elwood individually – engaged in significant, but non-apparent, fraudulent cost-cutting measures that resulted in the construction defects in the Home.

161.     By way of limited example, the brick wall was installed without functioning weep screeds necessary to drain any water that infiltrated the brick wall.

162.     Weep screeds are required by the IBC code and are necessary to ensure that water is directed out of any walls it may seep into.

163.     Defendants' failure to appropriately install weep screeds rendered the Home vulnerable to the exact damages it sustained, including water infiltration, rotted sheathing, extensive mold growth and the retention of water – under pressure – up to the second floor level.

164.     Again, no lay person would know of this construction short-cut.

165.     The 200 CSP Defendants knew or should have known that the defective installation and attachment of the brick veneer and the failure to install weep screeds would allow water penetration into the construction and cause interior damage to the Home.

166.     In addition, the 200 CSP Defendants failed to disclose such defects to the Klehrs, despite a duty to make such disclosures at the time of the sale of the Home.

167.     Among other things, the Klehrs relied on the absence of any such disclosures in purchasing the Home.

168.     The 200 CSP Defendants conduct has significantly diminished the resale value of the Home, as the existence of these defects must be disclosed whenever the Klehrs attempts to re-sell the Home, regardless of what ultimate repairs may achieve, if such repairs are even possible given the extent of the issues set out above.

169.   As such, the Klehrs are unable to sell the Home at any reasonable price as a result of the significant construction defects currently extant.

170.   The Klehrs have attempted serious negotiation/mediation with the 200 CSP Defendants.

171.   Indeed, the Klehrs have attempted to resolve the defects over the course of four years and numerous conversations with 200 CSP Defendants and their representatives.

172.   At all times, such efforts have been met with deceit, stonewalling and obfuscation, thus making any further negotiation or mediation futile.

173.   Further, as set forth herein, Procaccino and Elwood are personally liable for the construction defects present in the Home.

174.   Rather than proceeding individually, Procaccino and Elwood instead chose to utilize the limited liability company form of 200 CSP to sell the Home and others like it.

175.   Despite that, Procaccino and Elwood retained sole control over 200 CSP, and made all decisions regarding the construction of the Home, the hiring of sub-contractors, and the subsequent remediation effort and lack thereof.

176.   Upon information and belief, Procaccino and Elwood caused 200 CSP to not engage proper professionals and oversight resources, despite 200 CSP's obligation to do so.

177.   Upon information and belief, Procaccino and Elwood caused 200 CSP to engage unqualified or underqualified sub-contractors to complete the construction, despite knowing such sub-contractors were unable or unwilling to build the Home competently and to code given the amount paid to them by Procaccino and Elwood.

178.   As set forth herein, Procaccino and Elwood routinely and regularly represented that the Home was a luxury construction, and any water-infiltration was minor and isolated.

21

179.     Procaccino and Elwood knew or should have known that these statements were untrue.

180.     Such statements were made with the intent that the Klehrs would rely on those statements, trust that the remediation plans devised by Procaccino and Elwood were sufficient, and ultimately accept such "remediation" without further investigation of the wide-spread defects in the Home.

181.     The Klehrs did reasonably rely on these representations and have directly suffered damages as a result, as more fully described elsewhere in this Complaint.

182.     Accordingly, Procaccino and Elwood utilized the artificial nature of 200 CSP to perpetuate a fraud.

183.     Further, the 200 CSP Defendants' attempts to cover up and conceal the defects, and their conduct of lulling the Klehrs into believing that the repairs completely remediated the water infiltration problems, was intentionally deceitful, outrageous, wanton, and reckless, and demonstrates that any further attempt at mediation would be futile.

184.     Upon information and belief, 200 CSP was specifically formed by Procaccino and Elwood for the purposes of constructing the Home, and other luxury homes on South 12th Street and elsewhere in Philadelphia.

185.     Accordingly, 200 CSP was specifically formed with the intent to protect Procaccino and Elwood from personal liability for any claims arising from their construction of luxury homes in Philadelphia.

186.     Procaccino and Elwood understood that 200 CSP was engaging in the business of constructing multi-million dollar homes in an expensive and highly desirable neighborhood in

Philadelphia, and as such, Procaccino and Elwood understood that 200 CSP had to be properly capitalized to engage in the construction of such luxury homes.

187.    At a minimum, 200 CSP was required to have sufficient capital to not only build the luxury homes, but also to be able to fund the complete remediation of each home in the event that any of the homes were defectively constructed.

188.    As a result of the sale of the Home, and the other homes on the block, 200 CSP made substantial profits.

189.    Those substantial profits should have been retained as capital by 200 CSP to meet its foreseeable repair and remediation obligations.

190.    Upon information and belief, those profits were stripped out of 200 CSP by Procaccino and Elwood.

191.    Upon information and belief, Procaccino and Elwood took those profits for their personal enrichment knowing 200 CSP would be financially incapable of meeting its repair and remediation obligations.

192.    Upon information and belief, at no time did 200 CSP have any independent or professional management or overseers to act as a check on the abuses caused by the fraudulent conduct of Procaccino or Elwood.

193.    Accordingly, Procaccino and Elwood engaged in a scheme to protect themselves from any liability arising from the defective construction of the Home, while simultaneously siphoning all of the profits and capital earned by 200 CSP from the sale of the Home, and other luxury homes like it.

194.    As a direct result of Procaccino and Elwood's conduct, 200 CSP is grossly undercapitalized.

195.    In refusing to accept the multiple attempts by the Klehrs to remediate these defects and the damage they have caused, the 200 CSP Defendants abdicated their responsibility to mitigate the damages to the Klehrs and left them with no other course of action than to seek protection from this court.

196.    Defendants' actions were outrageous in that they were committed wrongfully, knowingly, oppressively, intentionally, with an evil motive, actual malice, wanton and reckless disregard for the law, gross negligence and/or reckless indifference to the rights of the Klehrs over an extended period of time.

## COUNT I
## (VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION PURSUANT TO 73 PS § 201-3, et seq.)
## PLAINTIFFS v. THE 200 CSP DEFENDANTS

197.    Plaintiffs hereby incorporate all other paragraphs contained in this pleading as though fully set forth herein.

198.    The Unfair Trade Practices and Consumer Protection Law ("UTPCPL") was designed to promote full disclosure of information to consumers and to equalize market position and strength of the consumer vis-a vis the seller.

199.    In that regard the UTPCPL requires an expansive reading which reaches unfair and deceptive practices in all consumer transactions.

200.    The UTPCPL has frequently been applied in contracts for the sale of real estate. *See, e.g., Anderson v. Kessler*, 42 Pa. D & C.3d 79 (Ct Comm Pl., 1984); *Skurnowicz v. Lucci*, 2002 WL 922579 (Pa. Super. 2002); *Metz v. Quaker Highlands, Inc.*, 714 A.2d 447 (Pa. Super. 1998).

201.    The 200 CSP Defendants are persons as defined pursuant to 73 Pa. C.S.A. §201-2 and engaged in trade or commerce as defined pursuant to 73 P.S. §201-2.

202.    The Klehrs purchased the Home from the 200 CSP Defendants solely for the personal use of their family.

203.    The Klehrs purchased "goods" which fall under the UTPCPL.

204.    The foregoing misrepresentations constitute deceptive acts and unfair trade practices as defined pursuant to 73 P.S. § 201-2 in direct violation of the Unfair Trade Practices and Consumer Protection Act.

205.    Specifically, Defendants misrepresented that Defendants' "goods" were of a particular character, knowing they were not.  *See* 73 P.S. § 201-2(4)(v).

206.    Defendants misrepresented to the Klehrs that Defendants' "goods" were of a particular standard, quality or grade, knowing they were not.  *See* 73 P.S. § 201-2(4)(vii).

207.    Defendants' representations as to the particular character standard, quality and grade of their goods and services constituted a material misrepresentation as the Home actually provided to the Klehrs contained multiple defects which were concealed by Defendants.

208. In addition, Defendants' misconduct and misrepresentations constitutes "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" in violation of the UTPCPL.  *See* 73 P.S. § 201-2(4)(xxi).

209.    The Klehrs justifiably relied on Defendants' misrepresentations when they purchased the Home.

210.    The Klehrs first discovered the fraudulent and deceptive conduct of Defendants well after closing on the Agreement and moving into the Home.

211.    Indeed, the scope of Defendants' deception was not known until June 12, 2017, when the Klehrs engaged experts to fully examine and inspect the Home.

25

212.     As a direct and proximate result of Defendants misrepresentations, the Klehrs sustained and will continue to sustain significant damages as described above.

213.     As a direct and proximate result of Defendants' misconduct, the Klehrs are also entitled to treble damages, attorneys' fees, and cost of suit.

**WHEREFORE**, Plaintiffs Zachary and Deborah Klehr demands judgment in their favor and against Defendants 200 Christian Street Partners, Virgil Procaccino and Arthur Elwood jointly and severally, and requests that the Court enter an order:

     a.  Awarding the Klehrs actual damages and treble damages, including compensatory, punitive and/or consequential damages, in an amount to be determined at trial;

     b.  awarding the Klehrs pre- and post-judgment interest in an amount to be determined at trial; and

     c.  awarding the Klehrs such other and further relief as the Court may deem equitable, just and proper, including the award of costs, expenses, reasonable attorneys' fees, reasonable inspection fees, relocation costs, and damages for the diminution of value of the Home incurred by the Klehrs in this action.

## COUNT II
## (BREACH OF CONTRACT)
## PLAINTIFF v. THE 200 CSP DEFENDANTS

214.     The Klehrs hereby incorporate all other paragraphs contained in this pleading as though fully set forth herein.

215.     Pursuant to the Agreement of Sale, the 200 CSP Defendants were obligated to comply with Real Estate Seller Disclosure Law.

216.     The Agreement expressly states that a violation of the Real Estate Seller Disclosure Law allowed the Klehrs "to pursue any remedies that may be available under law or equity."  (Ex. A at §28, Agreement of Sale.)

217.    The Real Estate Seller Disclosure Law requires that "[a]ny seller who intends to transfer any interest in real property shall disclose to the buyer any material defects with the property known to the seller . . . ."  68 Pa. C.S.A. § 7303.

218.    Material defects are defined as "a problem with a residential real property or any portion of it that would have a significant adverse impact on the value of the property or that involves an unreasonable risk to people on the property.  68 Pa C.S.A. § 7102.

219.    As set forth more fully above, the Home was rife with defects that have had, and will continue to have, a significant adverse impact on the value of the property, and that involve an unreasonable risk to people on the property.

220.    The 200 CSP Defendants knew of these material defects in the Home prior to the sale of the Home and failed to disclose such defects to the Klehrs in any manner.

221.    The 200 CSP Defendants have breached the Agreement of Sale by their failure to comply with the Real Estate Seller Disclosure Law.

222.    As a direct and proximate result of that breach, the Klehrs have been damaged.

**WHEREFORE**, Plaintiffs Zachary and Deborah Klehr demands judgment in their favor and against Defendants 200 Christian Street Partners, Virgil Procaccino and Arthur Elwood jointly and severally, and requests that the Court enter an order:

a.  Awarding the Klehrs actual damages and treble damages, including compensatory, punitive and/or consequential damages, in an amount to be determined at trial;

b.  awarding the Klehrs pre- and post-judgment interest in an amount to be determined at trial; and

c.  awarding the Klehrs such other and further relief as the Court may deem equitable, just and proper, including the award of costs, expenses, reasonable attorneys' fees, reasonable inspection fees, relocation costs, and damages for the diminution of value of the Home incurred by the Klehrs in this action.

27

**COUNT III**
**(BREACH OF IMPLIED WARRANTY)**
**PLAINTIFF v. THE 200 CSP DEFENDANTS**

223.   The Klehrs hereby incorporate all other paragraphs contained in this pleading as though fully set forth herein.

224.   The 200 CSP Defendants impliedly warranted that the Home was:

     i.   Safe and fit for human habitation;

     ii.   Free from construction defects and faulty materials;

     iii.   Constructed in a workmanlike manner;

     iv.   Constructed according to sound building and engineering standards;

     v.   Constructed in accordance with all applicable building codes; and

     vi.   Constructed in accordance with the displayed architectural drawings.

225.   In addition, through the actions of each and every agent, representative and independent contractors for the 200 CSP Defendants, the 200 CSP Defendants impliedly and expressly warranted that all defects complained of would be properly and competently repaired.

226.   At all times material, the Klehrs relied on the 200 CSP Defendants' representations and warranties.

227.   As set forth more fully above, each of these implied warranties were breached:

     i.   The Home was not safe and fit for human habitation, as evidenced by the continuous water penetration;

     ii.   The Home was not free from construction defects and faulty materials;

     iii.   The Home was not constructed in a workmanlike manner;

     iv.   The Home was not constructed according to sound building and engineering standards;

     v.   The Home was not constructed in accordance with applicable building codes; and

     vi.   Despite the implied warranties and representations made by agents,

28

representatives and independent contractors, none of the repairs were properly and competently completed, and instead failed entirely to repair and remediate the damage to the Home. Such "repairs" only served to lull the Klehrs into believing the home had been fixed.

228.    Such damages include the cost to repair, remediate, and restore the Home to the condition it should have been delivered in.

229.    In addition, such damages include the diminution of value to the Home.

**WHEREFORE**, Plaintiffs Zachary and Deborah Klehr demand judgment in their favor and against Defendants 200 Christian Street Partners, Virgil Procaccino and Arthur Elwood jointly and severally, and requests that the Court enter an order:

    a.  Awarding the Klehrs actual damages and treble damages, including compensatory, punitive and/or consequential damages, in an amount to be determined at trial;

    b.  awarding the Klehrs pre- and post-judgment interest in an amount to be determined at trial; and

    c.  awarding the Klehrs such other and further relief as the Court may deem equitable, just and proper, including the award of costs, expenses, reasonable attorneys' fees, reasonable inspection fees, relocation costs, and damages for the diminution of value of the Home incurred by the Klehrs in this action.

**COUNT IV**
**(NEGLIGENCE)**
**PLAINTIFF v. THE 200 CSP DEFENDANTS**

230.    Plaintiffs hereby incorporate all other paragraphs contained in this pleading as though fully set forth herein

231.    Defendants owed the Klehrs a duty of care to ensure that the construction of the Home was completed in such a way that conformed to applicable building codes, and did not present a danger to the Klehrs.

232.    Defendants breached that duty in the manner in which they constructed the Home.

233.    As a direct and proximate result of those breaches, the Klehrs have been damaged.

**WHEREFORE**, Plaintiffs Zachary and Deborah Klehr demand judgment in their favor and against Defendants 200 Christian Street Partners, Virgil Procaccino and Arthur Elwood jointly and severally, and requests that the Court enter an order:

    a.   Awarding the Klehrs actual damages and treble damages, including compensatory, punitive and/or consequential damages, in an amount to be determined at trial;

    b.   awarding the Klehrs pre- and post-judgment interest in an amount to be determined at trial; and

    c.   awarding the Klehrs such other and further relief as the Court may deem equitable, just and proper, including the award of costs, expenses, reasonable attorneys' fees, reasonable inspection fees, relocation costs, and damages for the diminution of value of the Home incurred by the Klehrs in this action.

## COUNT V
### (NEGLIGENT SUPERIVISION)
### <u>PLAINTIFF v. THE 200 CSP DEFENDANTS</u>

234.    Plaintiff hereby incorporates by reference all other paragraphs as if set forth fully at length herein.

235.    The 200 CSP Defendants had a duty to exercise reasonable care in the selection, hiring, retention, and supervising of its employees and subcontractors.

236.    The 200 CSP Defendants and its owners and officers breached their duty to exercise reasonable care in the hiring and supervision of its employees when it failed to properly train and supervise competent employees, agents, representatives, sub-contractors and independent contractors in the construction of Home.

237.     Such failures led to the construction of the Home with significant and substantial defects, use of faulty materials, and failure to construct the Home to industry standard and according to the applicable building codes.

238.     As a direct and proximate result of The 200 CSP Defendants' negligent conduct, the Klehrs sustained the damages described herein.

**WHEREFORE**, Plaintiffs Zachary and Deborah Klehr demand judgment in their favor and against Defendants 200 Christian Street Partners, Virgil Procaccino and Arthur Elwood jointly and severally, and requests that the Court enter an order:

a.   Awarding the Klehrs actual damages and treble damages, including compensatory, punitive and/or consequential damages, in an amount to be determined at trial;

b.   awarding the Klehrs pre- and post-judgment interest in an amount to be determined at trial; and

c.   awarding the Klehrs such other and further relief as the Court may deem equitable, just and proper, including the award of costs, expenses, reasonable attorneys' fees, reasonable inspection fees, relocation costs, and damages for the diminution of value of the Home incurred by the Klehrs in this action.

## COUNT VI
## (CIVIL CONSPIRACY)
## PLAINTIFF v. THE 200 CSP DEFENDANTS

239.     The Klehrs hereby incorporates by reference all other paragraphs as though set forth fully at length herein.

240.     The 200 CSP Defendants, amongst themselves, conspired and agreed to fraudulently represent to the Klehrs, as well as multiple other homeowners not party to this suit, that they would design and construct homes without major defects or faults, in accordance with industry standards, according to the applicable building codes and according to the architectural drawings.

241.    The 200 CSP Defendants entered into this agreement in furtherance of this conspiracy, to avoid their obligations as set forth in the UTPCPL and to breach their obligations under both express and implied warranties, in an effort to maximize profits, avoid required costs and otherwise enrich themselves at the expense of damage to the Klehrs and their Home and personal property.

242.    The 200 CSP Defendants took multiple overt acts to accomplish these purposes, including, but not limited to the use improper construction practices, as well as a concerted campaign to misrepresent the extent of the defects to the homes and to misrepresent the nature of the futile "repairs" and "remediation" to the Home.

243.    As a result of these unlawful acts, the Klehrs has been damaged as set forth herein.

**WHEREFORE**, Plaintiffs Zachary and Deborah Klehr demand judgment in their favor and against Defendants 200 Christian Street Partners, Virgil Procaccino and Arthur Elwood jointly and severally, and requests that the Court enter an order:

      a. Awarding the Klehrs actual damages and treble damages, including compensatory, punitive and/or consequential damages, in an amount to be determined at trial;

      b. awarding the Klehrs pre- and post-judgment interest in an amount to be determined at trial; and

      c. awarding the Klehrs such other and further relief as the Court may deem equitable, just and proper, including the award of costs, expenses, reasonable attorneys' fees, reasonable inspection fees, relocation costs, and damages for the diminution of value of the Home incurred by the Klehrs in this action.

**COUNT VII**
**(NEGLIGENCE)**
**PLAINTIFF v. HARMAN DEUTSCH**

244.    Plaintiff hereby incorporates all other paragraphs contained in this pleading as though fully set forth herein

245.    Harman owed Plaintiff a duty of care to draft architectural plans that complied with the applicable building code.

246.    Harman – as a licensed architectural firm – knew and understood that defective structural elements of a multi-story Home is a clear danger to the inhabitants of the Home.

247.    Accordingly, Harman owed Plaintiff a duty to ensure that all architectural plans it drafted, sealed, and submitted to the builder could be constructed in a safe manner.

248.    Defendants breached that duty by submitting architectural plans that did not include necessary structural elements.

249.    The defective design included the improper wood support of the fourth floor brick veneer without a structural steel angle in contravention to IBC section 2104.1.6.

250.    The defective design failed to include necessary structural relief angles for the upper portions of the brick veneer in contravention to IBC section 1405.6.

251.    These actions are a violation of the standard of care in drafting architectural plans.

252.    Such reckless draftsmanship and design demonstrates a disregard for the rights and safety of Plaintiffs.

253.    Further, Harman had a duty to inform Plaintiffs of the defective design when it discovered the defects while drafting the Phase 2 plans.

254.    Harman failed to do so, despite ***knowing*** that the Phase 1 plans contained a ***structural*** design defect that presented a known danger to Plaintiffs and their children.

255.    Harman's breach was a direct and proximate cause of the defective construction of the Home.

256.     Further, Harman's actions in defectively designing the structural components of the Home were reckless, outrageous, and done in clear disregard of the rights of Plaintiffs to be safe in their own Home.

257.     Accordingly, as a result of Harman's actions, the Klehrs have been harmed.

**WHEREFORE**, Plaintiffs Zachary and Deborah Klehr demand judgment in their favor and against Defendant Harman Deutsch, and requests that the Court enter an order:

    a.  Awarding the Klehrs actual damages,including compensatory, punitive and/or consequential damages, in an amount to be determined at trial;

    b.  awarding the Klehrs pre- and post-judgment interest in an amount to be determined at trial; and

    c.  awarding the Klehrs such other and further relief as the Court may deem equitable, just and proper, including  damages for the diminution of value of the Home incurred by the Klehrs in this action.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by a jury of twelve (12) on all claims triable thereby.

Respectfully Submitted,

**BOCHETTO & LENTZ, P.C.**

Date:   December 6, 2017

/s/ Peter R. Bryant

By:_____

George Bochetto, Esquire
Peter R. Bryant, Esquire
1524 Locust Street
Philadelphia, PA, 19102
(215) 735-3900
(215) 735-2455
*Attorneys for Plaintiff*

# Exhibit B

**To Complaint for Declaratory Judgment**
**Nautilus Insurance Company v. 200 Christian Street Partners, LLC**



# NAUTILUS INSURANCE GROUP

Nautilus Insurance Company        Great Divide Insurance Company

## CERTIFIED POLICY SIGNATURE FORM

**Date :** 4/2/18

I certify that this is a true and correct copy of Policy Number  NN403063 .

_____
Authorized Underwriting Representative
Nautilus Insurance Company

7233 East Butherus Drive      Scottsdale, Arizona 85260      Phone 800.842.8972      480.951.0905      Fax 480.951.9730

A BERKLEY COMPANY℠



# NAUTILUS INSURANCE COMPANY

### A Stock Company

# COMMERCIAL LINES POLICY

## THIS POLICY IS NOT OBTAINED PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.

THIS POLICY CONSISTS OF:

- Declarations;
- Common Policy Conditions; and
- One or more Coverage Parts.  A Coverage Part consists of:
  - One or more Coverage Forms; and
  - Applicable Forms and Endorsements.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

_____          _____
            Secretary                                    President and CEO

Administrative Office:

7233 East Butherus Drive     Scottsdale, Arizona 85260     Telephone (480) 951-0905     Facsimile (480) 951-9730

*A BERKLEY COMPANY*®

E001J (11/06)

COMMERCIAL LINES POLICY - COMMON POLICY DECLARATIONS

# NAUTILUS INSURANCE COMPANY

Scottsdale, Arizona

**Transaction Type:  Renewal**

**Policy No. NN403063**

Renewal of Policy # NN294865          Inspection Ordered:

0831-NN-403063-13

Rewrite of Policy # _____          ☐ Yes  ☒ No

THE INSURER WHICH HAS ISSUED THIS

Cross Ref. Policy # _____

INSURANCE IS NOT LICENSED BY THE

NIC Quote # _____

PENNSYLVANIA INSURANCE DEPARTMENT AND IS

SUBJECT TO LIMITED REGULATION. THIS

**Named Insured and Mailing Address**
(No., Street, Town or City, County, State, Zip Code)

INSURANCE IS NOT COVERED BY THE

PENNSYLVANIA PROPERTY AND CASUALTY

200 Christian Street Partners, LLC; 12th
   and Lombard Street Assoc., LLC

INSURANCE GUARANTY ASSOCIATION PLACED

BY: Jimcor Associates, Inc., 525 Plymouth Rd., Suite

305, Plymouth Meeting, PA. 19462

**Agent and Mailing Address          Agency No. __03714 - 00__**
(No., Street, Town or City, County, State, Zip Code)

Jimcor Agency, Inc.
525 Plymouth Rd.
Suite 305
Plymouth Meeting , PA 19462

NO FLAT CANCELLATION

**Policy
Period:** From  10/23/2013  to  10/23/2014  at 12:01 A.M. Standard Time at your mailing address shown above.

**Business Description:** Contractor                                                    **Tax State** _PA_

**Form of Business:** ☐ Individual   ☐ Partnership   ☐ Joint Venture   ☐ Trust   ☒ Limited Liability Company (LLC)
☐ Organization, including a Corporation (but not including a Partnership, Joint Venture or LLC)

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY,
WE WILL PROVIDE YOU THE INSURANCE STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | **PREMIUM** |
|---|---|
| Commercial General Liability Coverage Part | $ ████ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |

| Tax & Fee Schedule | | TOTAL ADVANCE PREMIUM | $ ████ |
|---|---|---|---|
| PASLT | $  453.99 | Minimum & Deposit | |
| STAMPING FEE | 25.00 | | |
| POLICY FEE | 175.00 | TOTAL TAXES & FEES | $ ████ |
| | | **TOTAL** | $ ████ |

Form(s) and Endorsement(s) made a part of this policy at time of issue:
**Refer to Schedule of Forms and Endorsements.**

Preston-Patterson Co., Inc.

P.O. Box 244
Conshohocken, PA 19428

Countersigned: Plymouth Meeting ,PA    By  _Coryn F Thalmann_
            10/31/2013  OHY
                     BB                          Countersignature or Authorized Representative, whichever is applicable

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE
FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

E001 (04/09)                              **HOME OFFICE**

POLICY NUMBER: **NN403063**

Named Insured:    200 Christian Street Partners, LLC; 12th
                  and Lombard Street Assoc., LLC

## SCHEDULE OF FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| IL0017 | (11/98) | Common Policy Conditions |
| IL0246 | (07/02) | PA Changes - Cancel/Nonrenew |
| IL0910 | (12/03) | Pennsylvania Notice |
| E001J | (11/06) | Nautilus Policy Jacket |
| E906PA | (06/07) | Service of Suit - Pennsylvania |
| S013 | (07/09) | Minimum Earned Premium Endt |
| S150 | (07/09) | CGL Coverage Part Declarations |
| CG0001 | (12/04) | Comml General Liability Cvg Form |
| CG0067 | (03/05) | Excl - Violation of Statutes |
| CG2012 | (07/98) | Addl Ins-St/Political Sub-Permit |
| CG2018 | (11/85) | Addl Insd-Mortgagee/Assign/Rcvr |
| CG2147 | (07/98) | Excl-Employmt-Related Practices |
| CG2173 | (01/08) | Excl of Certified Acts of Terror |
| CG2196 | (03/05) | Silica/Silica-Related Dust Excl |
| IL0021 | (09/08) | Nuclear Energy Liab Excl Endt |
| L201 | (07/10) | Excl-Ext Insul/Finish Sys (EIFS) |
| L205 | (11/10) | Excl-Injury Empl/Contr/Vol/Wrkr |
| L213 | (06/06) | Excl-Certain Comp-Related Losses |
| L216 | (07/09) | Amend of Deftns-Insd Contract |
| L217 | (06/07) | Excl-Punitive Exemplary Dmgs |
| L223 | (06/07) | Exclusion - Total Pollution |
| L236 | (06/07) | Excl-Subsdnce/Mvmt of Land/Earth |
| L238 | (06/07) | Exclusion - Toxic Metals |
| L241 | (07/09) | Excl-Micro/Bio Organisms/Contam |
| L280 | (06/07) | Cond Excl-Weathr Rel Dmg-Roof Op |
| L288 | (06/07) | Addl Cond & Excl- Contr Subcontr |
| L292 | (06/07) | Excl-Work Completd Prior to Date |
| L305 | (08/07) | Excl-All Ops Cvrd by Cnsld Prg |
| L320 | (06/09) | Excl - Tainted Drywall Material |
| L408 | (03/12) | Changes-Civ Union/Domestic Prtnr |
| L601 | (12/09) | Amend of Conditions - Prem Audit |
| L850 | (05/09) | Deductible Liab Insurance |
| S038 | (07/09) | Amendment of Liquor Liab Excl |
| S261 | (07/09) | Exclusion - Asbestos |

The forms and endorsements shown on this Schedule constitute the entire policy at the time of issuance.

S902 (07/09)                                                                 Page 1 of 2

## SCHEDULE OF FORMS AND ENDORSEMENTS (Continued)

ADDITIONAL FORMS APPLICABLE:

The forms and endorsements shown on this Schedule constitute the entire policy at the time of issuance.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

IL 02 46 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

**1.** The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

**2. Cancellation Of Policies In Effect For Less Than 60 Days**

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

**3. Cancellation Of Policies In Effect For 60 Days Or More**

If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**a.** You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

**b.** You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

**c.** A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**d.** Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**e.** Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

© ISO Properties, Inc., 2001

f.  Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

4.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

5.  Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6.  If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

7.  If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

B.  The following are added and supersede any provisions to the contrary:

1.  **Nonrenewal**

    If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

2.  **Increase Of Premium**

    If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2001                IL 02 46 07 02          ☐

IL 09 10 12 03

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

---

**Instruction to Policy Writers**

Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania.

---